JODI LINKER
Federal Public Defender
Northern District of California
SOPHIA WHITING
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:         Sophia_Whiting@fd.org

Counsel for Defendant HOPKINS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHANTA HOPKINS,<br><br>Defendant. | **Case No.:** 24-CR-0219-VC; 16-CR-0477-VC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

    Shortly after his arrest for violating supervised release, Chanta Hopkins agreed to a global resolution to both resolve the violations and plead guilty to two new substantive charges. He agreed to forego all potential motions and litigation, waived indictment, and consented to proceed by information. On June 5, 2024, Mr. Hopkins pled guilty to the two charges of the information—possession with intent to distribute cocaine and aggravated identity theft. Mr. Hopkins has clearly demonstrated early and extraordinary acceptance of responsibility. In exchange, the government has agreed that a reasonable and appropriate disposition to the charges and the violations is a total sentence between 72 and 84 months.

    Not only has Mr. Hopkins displayed extraordinary acceptance of responsibility for his past crimes, he has also demonstrated extraordinary steps towards rehabilitation. Since his incarceration,

Mr. Hopkin joined the inaugural class of the Laborers' International Union of North America (LiUNA) vocational program at Santa Rita Jail. He has gained more than 20 construction-related certifications and continues to work full time at Santa Rita Jail five days per week.

Mr. Hopkins' decision to accept responsibility and dedicate himself to rehabilitation are steps in his repentance for his past disregard for the law and this Court. He will continue his self-improvement by pursuing electrician training and the Residential Drug Abuse Program (RDAP) while in BOP custody over the next many years. Upon his release, he will for the first time ever have the training, certifications, and networks to get a stable job. He will also have received intensive drug treatment to facilitate his continued sobriety upon his release. Mr. Hopkins is motivated to utilize these new skills for the sake of his family, including his daughter to whom he is now the sole living parent.

A significant total sentence of 72 months is appropriate in this case. With credit for time served and good time credits he will still remain in custody until approximately the end of November 2028—more than four years from now—before his eventual release. He will continue to use his time in custody to rehabilitate and mature so that he has a successful term of supervised release and re-entry to society.

## BACKGROUND

Chanta Hopkins was not given the opportunity to develop healthy coping skills and positive decision-making abilities as a child. *See* Presentence Investigation Report (PSR) ¶ 56.[i] His parents were in and out of his life. *Id*. They struggled with substance use disorder, which he witnessed from a young age. PSR ¶ 56, 57. They were also involved in the criminal system. PSR ¶ 56. Mr. Hopkins' grandmother, Marilyn, raised him as a young child and was the only consistent figure in his life. *Id*. When Mr. Hopkins did live with his mother, they did not have enough to eat or a stable place to live. PSR ¶ 58. Lacking a consistent and nurturing childhood led to Mr. Hopkins' own early introduction to the criminal system at just 13 years old. *Id*. Soon thereafter, his father brought Mr. Hopkins into drug distribution. PSR ¶ 58. Not only did Mr. Hopkins' childhood lack the care central to healthy development, he was furthermore subjected to physical and sexual abuse that has lasting and unresolved effects on him. PSR ¶ 59.

1    Now, Mr. Hopkins is an adult trying to overcome the trauma he was subjected to during his
2 core developmental years. He is trying to unlearn the examples set for him by his parents. At the
3 same time, he is dealing with the aging and loss of his childhood caretakers. During his last release,
4 he demonstrated his coping skills and decision-making were still poor.
5    Mr. Hopkins recognizes and takes responsibility for his disregard for this Court and Probation
6 by his actions while on supervised release. *See* Declaration of Sophia Whiting (Whiting Decl.),
7 Exhibit A, Chanta Hopkins Letter ("I'm ashamed and disgusted that we are meeting again under
8 these circumstances. Again my fate lies in your hand's [sic] for stupid decisions I made."). This was
9 certainly not his intention when he was released. The first seven months of supervised release
10 reportedly went very well.[1] Mr. Hopkins abided by strict location monitoring and was the primary
11 caretaker for his father, as he had promised. During the day, he cherished his ability to go to his
12 father's house with permission from Probation to serve as his in-home caretaker. *See* PSR ¶ 75. At
13 night, he remained at his approved residence. He will never forget those last months he was able to be
14 by his father's side. *See* Whiting Decl., Ex. B ("There's no way I could ever thank you enough for
15 what you did for me. What I got the chance to do was priceless and I will cherish those memories for
16 the rest of my life"). By November 30, 2021, though, Mr. Hopkins' poor coping skills came into full
17 display. Since his release, his grandmother, Marilyn, was diagnosed with cancer. PSR ¶ 56. Mr.
18 Hopkins was also struggling with his father's quickly deteriorating health. He ultimately relapsed and
19 began to again make bad decisions. On November 30, 2021, he was arrested in Napa County.
20 PSR ¶ 44. His father passed shortly thereafter in December 2021. PSR ¶ 55; Whiting Decl., Ex. C,
21 Father's Obituary. Mr. Hopkins stopped communicating with U.S. Probation. *See* PSR ¶ 38. He
22 remained at his reported residence for approximately one more year[2] and did not flee in the tradition
23 sense, but he is responsible for failing to report to Probation and for new misconduct.
24    Throughout his struggles, Mr. Hopkins continued to care deeply for his daughter. But this, too,
25 became more overwhelming when her mother passed in July 2022 in a car accident. *See* PSR ¶ 62;

---

[1] This is based on information provided by U.S. Probation in this district and the Eastern District of California and is consistent with the Form 12.
[2] PSR ¶ 64. The PSR mistakenly states he remained at the residence for two years after his father's death, but it was around one year.

DEFENDANT'S SENTENCING MEMORANDUM
*HOPKINS*

3

1   Whiting Decl., Ex. D, Gage Obituary. Despite the dissolution of their romantic relationship years
2   prior, the mother of his child had remained a consistent support for Mr. Hopkins since he was young.
3   PSR ¶ 62. She was an incredible mother to their daughter, and he tried his best to step in after her
4   loss. Although he was present for his daughter, Mr. Hopkins did not handle the loss of his loved ones
5   well. He continued on a downward path until he was apprehended in this case on October 23, 2023.

6          Since his arrest, Mr. Hopkins has committed to rehabilitation unlike ever before. He is learning
7   from positive role models and hard work as
8   part of the LiUNA vocational program at
9   Santa Rita Jail. The program is a new
10  partnership between the laborers union and
11  Alameda County Sheriff's Department,
12  based around a twelve-week pre-
13  apprenticeship program. The program



Mr. Hopkins sitting to the far left at his graduation.

14  teaches mental and behavioral fundamentals, by requiring a positive and receptive attitude,
15  timeliness, hard work, and trust. The program provides direct entry into the union upon release, pays
16  for their first three months of union dues, and purchases their hands tools to commence work. Fox
17  Local News reported on the program and the graduation ceremony. KTVU Fox, *Laborers'*
18  *International Union of North America – Local 304 – SRJ Vocational Job Training Program*,
19  Alameda County Sheriff's Office via Youtube (May 9, 2024),
20  https://www.youtube.com/watch?v=yyiscc485bY. Since his graduation, Mr. Hopkins has remained
21  involved in the program through working five days per week from 7 a.m. to 3 p.m. on job sites at the
22  jail, continuing education, and mentoring new participants.

23         Mr. Hopkins has also stayed sober in custody and hopes to gain more tools for maintaining his
24  sobriety and mental health from the RDAP program.

25                                          **DISCUSSION**

26  **I.      A sentence of 72 months would be sufficient but not greater than necessary to achieve the
             sentencing goals of § 3553(a)**
27
           Mr. Hopkins' adjusted offense level is 29 based on the career offender guidelines. PSR ¶ 20.
28
    Mr. Hopkin's criminal history category (CHC) is VI. PSR ¶ 41. The advisory guideline range is

therefore 151 to 188 months.

Mr. Hopkins is a career offender due to prior controlled substance offenses—not crimes of violence. Mr. Hopkins has never been accused or convicted of a crime of violence. Nonetheless, his criminal history is extensive and he needs to change if he is to ever lead a free, law-abiding life. The two main changes underway are—(1) staying sober through treatment for his substance use disorder, and (2) continuing his training and education for lawful employment. Both parties and probation recognize that a sentence within the career offender guidelines is not necessary or appropriate to hold Mr. Hopkins accountable in this case.

Although the Court must remain mindful of the guideline recommendation, the range established by the Sentencing Guidelines is not presumptively reasonable and it cannot be given any more or less weight than any other factor listed in section 3553(a). *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court's paramount concern is to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Carty*, 520 F.3d at 991.

Under the applicable 18 U.S.C. § 3553(a) factors, Mr. Hopkins respectfully requests that the Court vary downward from the advisory guideline range to the range agreed-upon by the parties of 72 to 84 months. He submits that the low-end of that range, a sentence of 72 months, is appropriate for the following reasons.

**II.    Mr. Hopkins has demonstrated early and extraordinary acceptance of responsibility**

Mr. Hopkins has allowed this case to be handled extremely efficiently, thereby saving significant resources. His acceptance of responsibility is further reflected in his letter to the Court:

> In accepting my responsibility I would also like to acknowledge my conduct. Slipping back into my old habits not only effected me, it also effected my family and community.
>
> That's the part that keeps me up at night. I could never physical hurt someone and never will. I'm just not that type of person, but physical harm is not the only way to cause harm. Their's emotional, mental, financial, all of which are just as harmful.

Whiting Decl., Ex. B.

Mr. Hopkins decided to forego potential litigation despite the fact that an agent who had acted unlawfully in Mr. Hopkins' prior federal case again led his arrest in this case. This Court and the Ninth Circuit both found that the agent previously violated state law although, unlike this Court, the Ninth Circuit found the unlawful actions did not violate the Fourth Amendment. 16-CR-0477-VC, Dkts. 261, 355. The agent at issue continues to target Mr. Hopkins and those around him, at times inappropriately. That being said, Mr. Hopkins recognizes that he is in a different constitutional position due to being on supervised release and recognizes that, ultimately, he is responsible for committing the crimes for which he was arrested. Therefore, despite being troubled by some of the investigation leading to his arrest, he made an informed decision to forego litigation to enter into the negotiated plea agreement. The sentencing range recommended as appropriate in the plea agreement has taken these factors into account, as well as all of the relevant 3553(a) factors, to come to a meeting of the minds about the appropriate overall sentence. Mr. Hopkins initiated his acceptance of responsibility by reaching out to the government to propose a global resolution.

### III. Mr. Hopkins has demonstrated exemplary rehabilitation efforts since his incarceration and will continue to rehabilitate in BOP custody and on supervised release

Another reason Mr. Hopkins decided to plead guilty quickly this time is that he would like to spend the majority of his sentence in BOP custody, where he will have access to more rehabilitation resources. During his prior federal case, Mr. Hopkins litigated constitutional issues for three years before pleading guilty. That litigation was justified. That also meant, though, that he ultimately only spent a very short time in BOP custody before receiving compassionate release from this Court. His rehabilitation opportunities in custody are different this time for two reasons—(1) he has availed himself of the new Santa Rita Jail LiUNA vocational program, which provides an unprecedented rehabilitation resource at the pretrial level; and (2) he will have access to the resources—vocational and treatment—in BOP custody.

Mr. Hopkins acknowledges that he caused deep harm to victims and the community through his crimes. First, he caused harm by circulating dangerous drugs in the community. Second, he violated people's personal privacy and financial security through identity theft. There is no excuse for his

conduct and the harm it causes to innocent community members. Underlying his offenses are his substance use disorder and his lack of lawful employment. Through his rehabilitation in custody he is addressing both of these issues. He has remained sober in custody and requests access to the RDAP program for treatment to sustain his sobriety one in BOP custody. He has learned invaluable skills and performed hard physical labor while at Santa Rita Jail as part of the LiUNA vocational program.

Federal intervention is finally making a change in Mr. Hopkins. If the Court imposes the sentence recommended by Mr. Hopkins, he will be in BOP custody for approximately four more years. He is unlikely to receive any credits beyond standard good time credits, due to his criminal history. He is therefore expected to serve 85 percent of his sentence and will have more than enough time to engage in additional rehabilitative programming. He requests the Court recommend he be designated to FCI Marianna, Florida, and placed in RDAP. Whiting Decl., Ex. B. Upon his release, his plan is to live with his grandmother and daughter in Florida. He expects to be able to use his vocational training to obtain employment in Florida, as LiUNA is a nationwide labor union.

### IV. A sentence of 72 months provides appropriate and graduated punishment

A sentence of 72 months may initially seem low in light of Mr. Hopkins' prior federal sentence of 84 months for similar offenses. For two reasons, though, it is not. First, the prior sentence was the mandatory minimum statutory sentence due to the government's charging decisions in that case. In sentencing him to the mandatory minimum, this Court actually sentenced Mr. Hopkins below the parties' agreed-upon sentence of 90 months. The Court had no discretion to sentence Mr. Hopkins below eighty-four months. This time, the government agrees that Mr. Hopkins should receive a sentence of no more than eighty-four months.

Second, due to the Court's correct decision to grant compassionate release to Mr. Hopkins during the COVID-19 pandemic to care for his ailing father, Mr. Hopkins served less than 84 months. Mr. Hopkins was previously in custody for less than 50 months total. Therefore, a sentence of 72 months would be the longest sentence Mr. Hopkins has ever served. Even considering good time credits, he will serve approximately one year longer than any prior sentence. A sentence of 72 months is therefore sufficient but not greater than necessary to hold Mr. Hopkins accountable.

**CONCLUSION**

For the aforementioned reasons, Mr. Hopkins respectfully requests the Court sentence him to 72 months for both the new charges and the supervised release violations, followed by three years of supervised release with conditions recommended by Probation.

Dated:   September 5, 2024                    Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

                    /S
SOPHIA WHITING
Assistant Federal Public Defender

---

[i] Due to the timing of the PSR interview, the parties did not have an opportunity to review and respond to the updated Part C, Offender Characteristics, before the final PSR was submitted to the Court. Mr. Hopkins therefore respectfully provides the following corrections, which will also be provided to U.S. Probation:

1. Page 18, Paragraph 56: His grandmother Marilyn now lives in Florida.
2. Page 19, Paragraph 60: While Mr. Hopkins was in a longterm relationship with Ms. Green, he advised that the instant offense has put a strain on their relationship and they have decided it would be better to go their separate ways. He has decided to focus on starting a new life outside of California after his custodial sentence and plans to establish himself with family in Florida.
3. Page 19, Paragraph 62: Since his arrest, Sarai first lived with Mr. Hopkins' aunt and now his grandmother Marilyn has custody of Sarai in Florida.
4. Pages 19-20, Paragraph 64: Mr. Hopkins was on location monitoring after his release and received permission to go to his father's house in Oakland daily to be the primary caretaker for his father, who was injured in a shooting and subsequently had a stroke, which left him with the inability to use his legs and hands. According to Probation, he was compliant with location monitoring and other conditions from his release in April 2021 until November 2021. Mr. Hopkins remained at his reported resident in Fairfield after his father's death for about one more year, until he was evicted from his residence in late 2022.
5. Page 21, Paragraph 74: Mr. Hopkins' work at the jail begins at 7 a.m.
6. Page 21, Paragraph 75: Please add that approximately one year before his most recent arrest, Mr. Hopkins started a meat business called MeatHouse LLC. It had not yet become profitable by the time of his arrest in October 2023.